UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEE MONBO, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants. | Civil Action No. 23-2425 (JEB) |

MEMORANDUM OPINION

*Pro se* Plaintiff Dee Monbo's lawsuit challenges the Air Force's decision not to consider her company's bid for a contract. Because the Court lacks subject-matter jurisdiction over bid protests, it will grant Defendants' Motion to Dismiss.

I.   Background

The Court treats the facts in the Amended Complaint as true for the purposes of this Motion. Monbo is the sole proprietor of Monbo Group International, Ltd. (MGI), a Maryland corporation. See ECF Nos. 12-1 (Am. Compl.), Exh. 1 (Sole Proprietorship Registration); 20 (MTD Opp.), App. 5 (MGI Corp. Registration). On August 26, 2022, the Air Force solicited bids for "non-personal services in support of the Ninth Air Force Decoration Processing Unit." Am. Compl., ¶ 21. MGI's bid, which Plaintiff describes as a proposal submitted jointly by herself and MGI, was not accepted; instead, the award went to a competitor. Id., ¶ 39. On May 2, 2023, Plaintiff emailed Contracting Officer Joseph A. Nemedy to request an explanation of "why we are not the successful vendor." Id., ¶ 40 & Exh. 13 (Debriefing Request). Two weeks

1

later, he replied that MGI had failed to respond to an amendment posted in January, and it therefore "was not considered for the award." Id., ¶ 41 & Exh. 14 (Debriefing).

Plaintiff initially challenged her rejection in the Court of Federal Claims. See MTD Opp., App. 1 (Fed. Cl. Compl.). In that case, the defendant — the United States — moved to dismiss, pointing out that the proposal was submitted not by Monbo but by MGI. See MTD Opp., App. 2 (Fed. Cl. MTD) at 10–11, 13–15. As a result, the United States contended, Monbo lacked constitutional and statutory standing to bring the case on her own behalf. Id. at 9–15.

In apparent acceptance of the United States's contentions in the Court of Federal Claims, Monbo voluntarily dismissed her case there and filed her allegations here. See MTD Opp. at 2, 8 (accepting that the Court of Federal Claims had no subject-matter jurisdiction over her bid protest because she lacked standing); id., App. 4 (Fed. Cl. Notice of Voluntary Dismissal). In this suit, Plaintiff Monbo alleges that Defendants — the United States, the Air Force, and Nemedy — acted irrationally and arbitrarily in not considering MGI's proposal and not using Federal Acquisition Regulation procedures permitting them to seek clarification from MGI (apparently in violation of the Administrative Procedure Act). See Am. Compl., ¶¶ 44–86. She also alleges that the Air Force and Nemedy violated her right to equal protection. Id., ¶¶ 100–05. Plaintiff seeks declaratory and injunctive relief, including the termination of her competitor's award and "a new evaluation of quotations under the procurement." Id. at 22–23; see id., ¶¶ 87–99. Defendants now move to dismiss. See ECF No. 17 (MTD).

## II.     Legal Standard

When a defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must demonstrate that the court has subject-matter jurisdiction to hear her claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior,

231 F.3d 20, 24 (D.C. Cir. 2000).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim," the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  "Absent subject matter jurisdiction over a case, the court must dismiss it."  Bell v. U.S. Dep't of Health & Human Servs., 67 F. Supp. 3d 320, 322 (D.D.C. 2014).

In policing its jurisdictional borders, the court must scrutinize the complaint, granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The court need not rely "on the complaint standing alone," however, but may also look to undisputed facts in the record or resolve disputed ones.  See Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).  Pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court, nonetheless, need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint or merely amount to legal conclusions.  See Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

### III.   Analysis

In moving to dismiss, Defendants contend that this Court lacks subject-matter jurisdiction over Plaintiff's claims.  See MTD at 3.  Since 2001, the Administrative Dispute Resolution Act (ADRA) has divested federal district courts of jurisdiction to hear bid protests and other procurement-related claims.  The statute aimed "to develop a uniform national law on bid protest issues and end the wasteful practice of [forum] shopping."  Validata Chem. Servs. v. U.S. Dep't of Energy, 169 F. Supp. 3d 69, 78 (D.D.C. 2016) (quoting 142 Cong. Rec. 13,817 (1996)

(statement of Sen. Cohen)).  Now, the Court of Federal Claims has exclusive jurisdiction to hear claims brought by an "interested party" challenging a federal agency's solicitation of bids or proposals, its award of a contract, or "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1); see Pub. L. No. 104-320, § 12(d), 110 Stat. 3870, 3875 (1996) (indicating that concurrent district-court jurisdiction sunset in 2001); Alphapointe v. Dep't of Veterans Affs., 475 F. Supp. 3d 1, 9 n.5 (D.D.C. 2020) (citing Validata Chem. Servs., 169 F. Supp. 3d at 75–78 (outlining this history)).

The Court agrees with Defendants: Plaintiff's claims fall squarely within ADRA's scope, placing them within the exclusive jurisdiction of the Court of Federal Claims.  Monbo's suit is a standard bid protest: she challenges the award of a government contract to a competitor, alleging various violations of regulatory law in connection with the denial of MGI's proposal.  See Am. Compl., ¶¶ 44–86.  She seeks to have the Air Force terminate her competitor's award and revisit its procurement decision.  Id. at 22.  Because her suit is a classic bid protest, this Court lacks jurisdiction to hear it.

Plaintiff's inclusion of a constitutional claim does not change the calculus.  Monbo asserts that Defendants violated her right to equal protection, id., ¶¶ 100–05, which this Court construes as an invocation of the Fifth Amendment's Due Process Clause.  Specifically, Monbo refers to her identity as "an American female business owner" and alleges that Defendants "violated [her] guaranteed equal right to have her company that she created be fairly treated and to have her company compete fairly for federal government contracts."  Id., ¶¶ 102, 104.  In similar cases, "[w]here there is a possible alternative basis for district court jurisdiction over claims that otherwise fall within the exclusive jurisdiction of the Court of Federal Claims," courts in this district have asked "whether the claim is 'at its essence' one covered by the

4

relevant Court of Federal Claims statute — here, the ADRA — or is instead a constitutional or other statutory claim." Pub. Warehousing Co. K.S.C. v. Def. Supply Ctr. Phila., 489 F. Supp. 2d 30, 43 (D.D.C. 2007) (citation omitted). "This determination depends upon both the source of the rights upon which the plaintiff bases its claims and the type of relief sought (or appropriate)." Id. (cleaned up).

In Monbo's case, these two factors indicate that her equal-protection claim is, "at its essence," covered by ADRA. She alleges that her company was treated unfairly in the bidding process, but her claim is "ultimately premised" on vindicating her (or MGI's) regulatory rights. Validata Chem. Servs., 169 F. Supp. 3d at 89; see Am. Compl., ¶¶ 58–60 (citing FAR 15.306(a)(1)). Her claim does not "depend upon some fact, document, or right peripheral to contract administration." Pub. Warehousing Co. K.S.C., 489 F. Supp. 2d at 43. In addition, the relief she seeks — i.e., the termination of her competitor's contract, see Am. Compl. at 22 (citing FAR 52.249-2) — is "relief that may be available administratively." Pub. Warehousing Co. K.S.C., 489 F. Supp. 2d at 44. In sum, Monbo's constitutional claim is all but "indistinguishable from [her] non-constitutional claim[s]," Validata Chem. Servs., 169 F. Supp. 3d at 89, and this Court therefore lacks subject-matter jurisdiction to hear it. Cf. Pub. Warehousing Co. K.S.C., 489 F. Supp. 2d at 43–44 (concluding that a constitutional due-process claim is "at its essence" covered by ADRA). To be sure, constitutional challenges may sometimes overcome otherwise-impermeable jurisdictional barriers — but this is not such a case.

Attempting to remain in federal district court, Monbo shifts gears in her Opposition. She now argues that she is not an "interested party" because it was MGI, not she, who submitted the proposal at issue. See MTD Opp. at 5–8. Because she is not an "interested party," by her reasoning, ADRA does not divest this Court of subject-matter jurisdiction and she is permitted to

5

bring an Administrative Procedure Act claim.  Id. at 8–9.  Although the Court is under no obligation to accept Plaintiff's direct contradiction of her Amended Complaint in her Opposition, see Am. Compl., ¶ 9 (asserting Monbo's status as interested party), it will nonetheless examine her updated characterizations.

The question of whether Monbo is an "interested party" goes to whether she has statutory standing to bring this claim, not whether the claim itself is one over which this Court is divested of jurisdiction by ADRA.  As another court in this district explained, "[T]he term 'interested party' does not . . . define the types of claims that are covered by the ADRA, but rather . . . establishes who is within the 'zone of interests' of the ADRA for standing purposes." Pub. Warehousing Co. K.S.C., 489 F. Supp. 2d at 42.  "The cases that have concluded that a particular plaintiff was not an 'interested party'" under ADRA, accordingly, "involved plaintiffs who stood entirely apart from the bidding process," unlike Monbo.  Id.  At least one court, moreover, has concluded that ADRA's "interested party" language describes plaintiffs pursuing "the full range of APA claims previously pursued under [a predecessor] doctrine — including claims by a plaintiff who is not a disappointed bidder . . . but who possesses standing under the broader standing rule of § 702 of the APA," an interpretation under which Monbo is certainly an "interested party."  Validata Chem. Servs., 169 F. Supp. 3d at 82.  Regardless, because the "interested party" language merely defines who has statutory standing to sue, not "the types of claims that are covered by the ADRA," Pub. Warehousing Co. K.S.C., 489 F. Supp. 2d at 42, the Court need not decide whether Monbo is an "interested party" to conclude that ADRA deprives it of subject-matter jurisdiction over her bid-protest claims.

Nor does the APA provide an independent basis for this Court's jurisdiction.  Following the enactment of ADRA, "there no longer is . . . independent, APA-based jurisdiction for the

district courts in government bid protest cases; rather, Congress effectively subsumed APA jurisdiction of the district courts into the more specific jurisdictional language of ADRA." Novell, Inc. v. United States, 109 F. Supp. 2d 22, 24 (D.D.C. 2000); see also Labat-Anderson, Inc. v. United States, 346 F. Supp. 2d 145, 153 (D.D.C. 2004) (concluding that ADRA divested district courts of jurisdiction not only over bid protests but also over "[a]ll challenges to the award or proposed award of government contracts, including challenges in connection with government procurements"). ADRA's purpose, "to consolidate all procurement-related claims against the government in a single tribunal," Validata Chem. Servs., 169 F. Supp. 3d at 85, reinforces this Court's conclusion that if Monbo's suit belongs in any federal court, it belongs in the Court of Federal Claims.

### IV.  Conclusion

For the foregoing reasons, the Court lacks subject-matter jurisdiction over Plaintiff's claims. Because she has already voluntarily dismissed her suit in the Court of Federal Claims, the Court will dismiss this case instead of transferring it there. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: December 1, 2023